IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SARA KINNEY, | CV 19–117–M–DWM |
| Plaintiff/Counter-Defendant, | |
| vs. | ORDER |
| JOHN MARK PORTERFIELD, | |
| Defendant/Counter-Claimant. | |

Plaintiff Sara Kinney sued Defendant John Porterfield based on an alleged sexual assault that took place in July 2017. (Doc. 1.) Her Complaint claims battery, false imprisonment, assault, negligent and intentional infliction of emotional distress, negligence, and punitive damages. Porterfield counterclaims, alleging defamation and intentional infliction of emotional distress.[1] (Doc. 4.) Porterfield now seeks to exclude *in limine*: (1) evidence or testimony referring to the presence of Diphenhydramine in Kinney's system; (2) police case and field reports; (3) video footage from the bar; (4) reference or use of terms "rape" or "rapist"; (5) testimony by Dr. Aaron A. Harris, Ph. D as to the truth of Kinney's allegations; (6) "Golden Rule" arguments; and (7) reference to or comments about

---

[1] Following a motion for summary judgment, Porterfield's claims are limited to Kinney's conduct after August 13, 2017. (*See* Doc. 22.)

1

pretrial motions. (Doc 32.) Kinney does not object to (6) and (7), (Doc. 34 at 2); the remaining matters are addressed in turn.

## ANALYSIS

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). While courts have broad discretion in ruling on such motions, they should be granted only when the evidence is "inadmissible on all potential grounds." *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (internal quotation marks omitted). "[A] district court may change an *in limine* ruling at trial if facts or circumstances arise to warrant the change." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

### A. Presence of Diphenhydramine

Porterfield seeks to exclude any testimony, evidence, or argument referring to Kinney ingesting Diphenhydramine on July 15 or 16, 2017, or its presence in her system. He further seeks to exclude admission or reference to the Montana DOJ Forensic Science Division "Toxicology Report." While the incident between Kinney and Porterfield occurred on July 15 and 16, it appears the toxicology sample was not taken until July 19. (*See* Doc. 33-3 at 15–18 (discussing process); *id.* at 24 (toxicology report but does not mention date sample taken)); *but see* Harris Report, Doc. 33-5 at 8 (indicating Kinney self-reported that lab samples

were taken while she was still in Montana).)  Kinney presents nothing in response to the present motion to show that Diphenhydramine ingested on or before July 15 and 16 would still be in her system on July 19.  If that connection cannot be made, the toxicology report and any reference to her being drugged based on that report are irrelevant.  *See* Fed. R. Evid. 401.  Thus, before presenting evidence or testimony to the jury regarding the drug test or drugs in her system, *see* Fed. R. Evid. 403, Kinney must make the necessary temporal connection between the incident and her exam, *see* Fed. R. Evid. 104(b).

Porterfield further challenges the admission of such evidence on the grounds that it requires expert testimony under Rule 702, specifically focusing on how Diphenhydramine may have affected Kinney's ability to consent.  In response, Kinney identifies five disclosed experts she believes can testify to the toxicology results: Toxicologists Eric Miller, Elizabeth Smalley, and Crystal Everett, Forensic Scientist Doug Lancon, and Serologist Lacey VanGrinsven.  The truth of Kinney's proffer shall be determined at trial through the Court's standard practice of limiting expert testimony to what was fairly disclosed in each expert's disclosure.  *See* Fed. R. Civ. P. 26(a)(2). Either those disclosures contain the relevant opinions— including the necessary temporal connection—or they do not.

Porterfield's motion to exclude this evidence is tentatively granted to the extent outlined above.  It is denied in all other respects.

### B. Police Reports

Porterfield seeks to exclude the Police Case and Field Case Reports of the Whitefish and Idaho Falls Police Departments on the grounds that they constitute inadmissible hearsay under Rules 801 and 802. (*See* Docs. 33-3, 33-4 (reports).) While Porterfield is generally correct that the reports contain numerous out-of-court statements, "entries in a police report which result from the officer's own observations and knowledge may be admitted" under the business records exception to the hearsay rule. *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983); *see also Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973). And third-party statements in the report may be admissible under an independent hearsay exception, such as the party opponent rule. *See* Fed. R. Evid. 801(d)(2). Because the reports—or at least parts of them—are not inadmissible on all possible grounds, they are not excluded in limine. This means appropriate objections at trial are the means of testing the admissibility of the reports, or part of them.

### C. Video Footage

Porterfield seeks to exclude the video footage from the Great Northern Bar under the Rule of Completeness, citing Rule 106. The video recordings at issue portray Porterfield and/or Kinney at three different times for a total of two minutes and one second. Porterfield argues these segments "provide an incomplete picture of the events which took place on the night in question." (Doc. 33 at 12.) Pursuant

4

to Rule 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Porterfield's motion fails for the reasons discussed below.

First, Rule 106 allows a party to present additional statements or recordings to the jury, it does not inherently provide for the exclusion of incomplete statements or recordings. Here, Porterfield does not seek to offer the complete recording. This appears to be, however, because more complete recordings do not exist. But Porterfield does not paint a clear picture of who failed to preserve what. The record indicates that the Great Northern Bar reviewed its video footage for Kinney after receiving a call from her husband. (*See* Doc. 33-3 at 6.) Sergeant Conway of the Whitefish Police apparently "reviewed the provided copy of video surveillance" and identified both Kinney and Porterfield at 0142 hours of the footage. (*Id.*) But his report then states that "[t]he video then changes to a view of the rear door to the Great Northern Bar at 0149 hours when the same male and female are seen leaving." (*Id.*) "The video continues by changing to a view of the rear bar area dated 7/15/2017 at 2045 hours." (*Id.*) Sergeant Conway then concludes this part of his report by stating "[t]he video was submitted into evidence." (*Id.* at 7.) It therefore seems that the only recordings documented and preserved from the very start of the case are the three at issue.

That distinguishes this case from that relied upon by Porterfield, *United States v. Yevakpor*, 419 F. Supp. 2d 242 (N.D.N.Y. 2006). In *Yevakpor*, law enforcement purposely preserved only three segments of a video recording of the border stop and search of the defendant. *Id.* at 244, 247. In the subsequent criminal proceeding, the court excluded the "cherry-picked" video segments, relying heavily on the government's duty in a criminal case to preserve evidence, *id.* at 247, particularly evidence that could be exculpatory, *id.* at 249. As argued by Kinney, this civil case does not have the same liberty interests or duties as those in *Yevakpor*. Apparently, nor did the officers who collected evidence here fail to preserve evidence.

Second, "the Rule of Completeness is not so broad as to require the admission of all redacted portions of a statement, without regard to content." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). If the incomplete statement is not misleading, "the Rule of Completeness d[oes] not require admission of the full statement into evidence." *Id.* Though Porterfield argues that other interactions that night may implicate Kinney's mental state, he does not allege that the video segments themselves are inaccurate. Though "[i]t is difficult to determine whether any other part ought be considered contemporaneously with the proffered part since no other parts of the video exist for review," *Yevakpor*, 419 F. Supp. 2d at 246 (cleaned up), Porterfield fails to make a threshold showing that

the snippets themselves are misleading, *see United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (requiring a party to show the complete recording would "serve to correct a misleading impression" created by taking the snippets "out of context"). Porterfield's motion to exclude the recordings under Rule 106 is denied.

### D.     Rape/Rapist

Pursuant to Rule 403, Porterfield seeks to exclude "any testimony, argument, innuendo, or evidence referring to or classifying Porterfield as a rapist at trial, or referring to or classifying the acts alleged in Kinney's Complaint as rape." (Doc. 33 at 13.) Kinney argues that nonconsensual sex is the very conduct alleged in the complaint and that it will be difficult to argue that case without an "innuendo" of rape. In response, Porterfield narrows his request to referring to or classifying him as a "rapist" or the act as "rape." (Doc. 37 at 11.) It is appropriate to exclude solely the use of those specific terms as unduly prejudicial under Rule 403.

### E.     Dr. Harris' Testimony

Kinney designated Dr. Aaron A. Harris, Ph. D to provide an expert opinion that she suffers PTSD and major depressive disorder as a result of the alleged incident. (*See* Doc. 33-5 (report).) Porterfield seeks to prohibit Dr. Harris from testifying that "he believes Kinney's allegations concerning the assault, battery and false imprisonment as alleged in Kinney's Complaint, or that he believes the

y

incidents alleged by Kinney occurred as she alleged." (Doc. 33 at 15.) That motion is granted in part.

Dr. Harris' conclusions regarding the cause of Kinney's mental condition are necessarily based on his determination that she is a good historian and accurately described the events in question. But at the same time, it is problematic—and somewhat circular—to allow Kinney to present her diagnosis of PTSD to prove that a rape occurred. Dr. Harris' testimony about Kinney's mental condition after the fact goes to the nature and extent of Kinney's damages, not liability. And even considering all that Kinney told Dr. Harris about the incident, Dr. Harris cannot opine on what Porterfield knew or did not know regarding her ability to consent. As a result, Dr. Harris is limited to testifying about the data and information he based his opinion on and the method he used to reach his conclusion. *See* Fed. R. Evid. 702. Put differently, he may testify that Kinney's actions after the incident and a PTSD diagnosis are consistent with the trauma as described by Kinney, *see* Fed. R. Evid. 703, but he is prohibited from stating that she suffers PTSD because she was sexually assaulted by Porterfield, *see* Fed. R. Evid. 704. This is a fine line that will be subject to specific trial objections.

## CONCLUSION

Based on the foregoing, Porterfield's motion (Doc. 32) is GRANTED in PART and DENIED as PART as follows:

(1) **Diphenhydramine:** GRANTED insofar as Kinney is required to make a temporal connection *before* presenting testimony regarding drugs in her system and her experts are limited to disclosed opinions, DENIED in all other respects;

(2) **Police Reports:** DENIED, subject to trial objection;

(3) **Video Footage:** DENIED, subject to trial objection;

(4) **Use of Rapist Terminology:** GRANTED as to the use of the specific terms but DENIED as to innuendo or suggestion of nonconsensual sex, subject to trial objection;

(5) **Dr. Harris' Testimony:** GRANTED insofar as Dr. Harris is prohibited from opining that Kinney's mental condition resulted from her being sexually assaulted by Porterfield but DENIED as to his opinions that Kinney's actions after the incident and her diagnosis are consistent with her reporting;

(6) **Golden Rule:** GRANTED; and

(7) **Pretrial Motions:** GRANTED.

DATED this 5th day of August, 2020.

_____
Donald W. Molloy, District Judge
United States District Court